**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

STEPHEN GIANNAROS,

               Plaintiff,

    v.

POLY-WOOD, LLC,

               Defendant.

Civil Action No. 1:21-cv-10351

**DECLARATION OF KEVIN W. TUCKER IN SUPPORT OF PLAINTIFF'S**
**ASSENTED-TO MOTION TO CERTIFY THE CLASS FOR**
**SETTLEMENT PURSPOSES AND FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

I, Kevin Tucker, declare and state as follows:

1.     I am a partner at East End Trial Group LLC ("East End") and am one of the attorneys of record for Plaintiff in the above captioned action. I submit this declaration in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement.

**OVERVIEW OF THE AGREEMENT**

2.     Attached hereto as **Tucker Decl. Ex. A** is a true and correct copy of the proposed class action settlement Agreement.[1] The Agreement resolves Plaintiff's class action claims against Poly-Wood, LLC ("Defendant") under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.*, and its implementing regulations ("ADA") regarding Defendant's online stores, located at https://www.polywood.com/, https://www.ivyterracefurniture.com/, and https://www.trexfurniture.com/ ("Websites"), and whether the Websites communicate information to consumers with visual disabilities fully and equally.

---

[1] All capitalized terms have the meaning assigned to them in Section 2 of the Agreement.

3.      The Agreement applies to the following Settlement Class:

[A]ll Blind or Visually Disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from accessing the Website from the United States.

*Agreement*, Tucker Decl. Exhibit A, § 2.33.

4.      Under the Agreement, Defendant will ensure the U.S. portions of the Websites are Accessible within 36-months of the Court granting Final Approval. *Id.* § 4.1. The Agreement provides a number of benchmarks (many of which build upon each other) Defendant must meet during the 36-month Agreement Term. This allows Defendant to implement a thoughtful approach to accessibility that increases its likelihood of success and benefit to blind consumers. These benchmarks are summarized below.

| Time from Effective Date | Benchmark | Agreement, Tucker Decl. Ex. A |
|---|---|---|
| 6 Months | Designate an internal Accessibility Coordinator | § 6 |
| 9 Months | Retain an outside Accessibility Consultant | § 7 |
| 12 Months | Complete an Accessibility Audit of the Websites with automated and end-user testing | § 8 |
| 12 Months | Develop an Accessibility Policy Statement | §§ 10.1, 10.2 |
| 12 Months | Post the Accessibility Policy Statement on the Websites | § 10.1 |
| 12 Months | Link to the Accessibility Statement (i) at the top of each homepage of any Digital Properties existing as of the Effective Date; (ii) via hidden text (only viewable by screen reader software) located at the top of each homepage; or (iii) through an equivalent method of conveying the Accessibility Statement at the start of a screen reader user's experience on the Digital Properties | § 10.4 |
| 18 Months | Develop and implement an Accessibility Strategy to ensure the Website is Accessible within the Agreement Term | § 9.1 |

| 18 Months | Disseminate the Accessibility Strategy among all personnel who have managerial responsibility for the design and development of the Website | § 9.5 |
| 18 Months | Train all employees responsible for website and mobile application design, development, and maintenance to ensure the Digital Properties are and remain Accessible | § 11.1 |
| Within 30 Months, and Annually Thereafter | Provide refresher Accessibility training on an annual basis | § 11.2 |
| 36 Months | Ensure the Website is Accessible | § 4.1 |

5.      The Agreement also includes a number of other obligations to which Defendant must adhere immediately upon Final Approval, including:

| Time from Final Approval | Benchmark | Agreement, Tucker Decl. Ex. A |
|---|---|---|
| Immediately | Request that vendors provide third-party content that is Accessible or that Defendant can make Accessible | § 5 |
| Immediately | Ensure the U.S. portion of any New Websites and Mobile Apps are Accessible at the time of their release | § 4.2 |
| Immediately | Ensure the U.S. portion of Subsequently Acquired Websites and Mobile Apps are Accessible within eighteen (18) months of their acquisition | § 4.3 |
| Immediately | Ensure that a process is in place going forward to remediate any bugs that create Accessibility barriers to the Digital Properties with the same level of priority (e.g., speed, resources used to remediate) as any other equivalent loss of function for individuals without disabilities | § 9.3 |
| Immediately | Add the Accessibility Policy Statement to any New Websites and Mobile Apps at the time of their release | § 10.5 |
| Immediately | Add the Accessibility Policy Statement to Subsequently Acquired Websites and Mobiles Apps within 6 months of acquisition | § 10.6 |
| Immediately | Perform an accessibility audit on a semi-annual basis to evaluate whether the Digital Properties are Accessible | § 13.1 |

| Immediately | Perform end-user accessibility/usability testing to evaluate whether the Digital Properties are Accessible | § 14.1 |
| --- | --- | --- |

6.      Per the Agreement, Defendant shall train all employees responsible for website and mobile application design, development, and maintenance to ensure future design, development, and maintenance of the Digital Properties are and remain Accessible. *Id.* § 11.1. Defendant will also provide annual refresher training. *Id.* § 11.2.

7.      To aid Plaintiff and Class Counsel's future monitoring obligations, the Agreement requires Defendant to provide various reports to Class Counsel for review and comment. Below is a summary of these reporting obligations.

| Information | Deadline | Agreement, Tucker Decl. Ex. A |
| --- | --- | --- |
| Annual Report | The Effective Date's anniversary date during the Agreement Term | § 2.10 |
| Letter of Reasonable Accessibility | Every six (6) months following the Effective Date during the Agreement Term | § 2.22 |
| Third-Party Content that Poly-Wood cannot confirm is Accessible | To be included in the Annual Report | § 5.3 |
| Confirmation that Poly-Wood has designated the Accessibility Coordination Team | 6 months of the Effective Date | § 6.1 |
| Confirmation that Poly-Wood has appointed or retained an Accessibility Consultant | 9 months of the Effective Date | § 7.1 |
| The Accessibility Consultant's Status Report | To be included in the Annual Report | § 7.4 |
| Changes to the Accessibility Consultant | 3 months of the change | § 7.5 |

| Accessibility Audit | To be included as an exhibit to the Annual Report due on the first anniversary of the Effective Date | § 8.3 |
|---|---|---|
| Accessibility Strategy | 18 months of the Effective Date | § 9.4 |
| Accessibility Statement | 9 months of the Effective Date | § 10.3 |
| Status of Accessibility Statement | To be included in the Annual Report | § 10.7 |
| Accessibility Training Material | To be included in the Annual Report | § 11.3 |
| The results of Poly-Wood's semi-annual accessibility audit | To be included in the Annual Report or Letter of Reasonable Accessibility, whichever is next due | § 13.2 |
| Annual end-user accessibility testing results | To be included in the Annual Report or Letter of Reasonable Accessibility, whichever is next due | § 14.2 |

8.      Plaintiff is not aware of any individual settlement agreement, class action agreement, or consent decree that imposes more comprehensive obligations than the Agreement.

9.      The Agreement is at least as comprehensive as any publicly available settlement resolving digital accessibility claims of which Plaintiff's Counsel are aware. This is unsurprising as the parties looked to those agreements as the model for resolution in this case. *See e.g.*, Proposed Settlement Agreement Between the United States of America and Ahold U.S.A., Inc. and Peapod, LLC, DJ 202-63-169 (Nov. 17, 2014), available at https://www.justice.gov/file/163956/download (last visited Oct. 12, 2021); Settlement Between Penn State University and National Federation of the Blind, U.S. Dept. of Ed., Office for Civil Rights (OCR) #03-11-2020, available at https://accessibility.psu.edu/nfbpsusettlement/ (last visited August 25, 2021); Youngstown State University Resolution Agreement, U.S. Dept. of Ed., Office for Civil Rights (OCR) #15-13-6002 (Nov. 25, 2014), available at https://www2.ed.gov/documents/press-releases/youngstown-state-university-agreement.pdf (last visited Oct. 12, 2021). Plaintiff is not aware of any individual

settlement agreement or consent decree that imposes more comprehensive obligations than agreed to by the Department of Justice, Department of Education, and National Federation of the Blind in similar disputes.

10.    The only other resolution of digital accessibility claims that is on par with the Agreement here is that which was preliminarily approved in *Murphy v. Eyebobs*, No. 1:21-cv-00017, 2021 U.S. Dist. LEXIS 192676 (W.D. Pa. Oct. 6, 2021) ("*Eyebobs*"); *Murphy v. Charles Tyrwhitt, Inc.*, No. 1:20-cv-00056, 2020 U.S. Dist. LEXIS 222540 (W.D. Pa. Nov. 25, 2020), *report and recommendation adopted by Murphy v. Charles Tyrwhitt, Inc.*, 2021 U.S. Dist. LEXIS 144 (W.D. Pa., Jan. 4, 2021) ("*Charles Tyrwhitt*").

11.    Attorney Abramowicz and I are class counsel in *Eyebobs* and *Charles Tyrwhitt*.

12.    In *Eyebobs* and *Charles Tyrwhitt*, the United States District Court for the Western District of Pennsylvania preliminary approved substantially similar class action settlement agreements resolving identical ADA claims brought by visually impaired consumers against an online retailer. *Id.*

13.    Attached hereto as **Tucker Decl. Ex. B** is a copy of the settlement agreements preliminarily approved in *Eyebobs* and *Charles Tyrwhitt.*

14.    The parties to the both the *Eyebobs* and *Charles Tyrwhitt* actions are awaiting the Court's order on final approval.

15.    In 2020, the United States District Court for the Central District of California preliminary approved a far less robust class action settlement agreement resolving substantially similar ADA claims brought by a visually impaired consumer against an online retailer. *See Brooks v. Pressed Juicery, Inc*., 336 F.R.D. 484 (E.D. Cal. 2020), *modified by* Order, *Brooks v. Pressed Juicery, Inc.*, No. 2:19-cv-01687-KJM-CKD, ECF 32 (Sept. 30, 2021 E.D. Cal.) (no change to

remediation terms). Attached hereto as **Tucker Decl. Ex. C** is a copy of the settlement agreement preliminarily approved in *Pressed Juicery*.

**NOTICE**

16.     The proposed Notice is attached as **Tucker Decl. Ex. D**.

17.     The Notice sets forth the background of the case, recites the proposed class definition, outlines the main terms of the proposed Agreement, explains to class members how to object and the deadline for doing so, and informs class members how they can obtain more information about the Agreement.

18.     The proposed Notice Plan is attached as **Tucker Decl. Ex. E**.

19.     The Notice Plan relies on electronic information technology to distribute Notice.

20.     As soon as practicable, but no later than twenty-one (21) days after the Court's entry of a Preliminary Approval Order, Defendant will "[c]ause a stipulated class action settlement notice to be published on a search-engine-optimized ("SEO") settlement website, located at www.polywoodadasettlement.com, that is operated by a stipulated class action settlement administrator or similar entity." Tucker Decl. Ex. A, § 24.1, Tucker Decl. Ex. E, 1.

21.     Crucially, given the settlement will be most important to Defendant's consumers, Defendant will post links to the Notice website on key webpages of the Websites as soon as practicable, but also no later than twenty-one (21) days after the Court's entry of a Preliminary Approval Order. Tucker Decl. Ex. A, § 24.3, Tucker Decl. Ex. E, 1.

22.     Plaintiff's Counsel will also send a copy of the Notice to relevant nonprofit organizations and agencies whose members or constituents include and/or whose work is relevant to people who are blind of have a visual disability. Tucker Decl. Ex. A, § 24.4, Tucker Decl. Ex. E, 1-2.

## CASE PROCEEDINGS

23.     Prior to filing the Complaint in this action, my colleagues and I conducted a thorough investigation of the claims that were asserted and the factual basis for those claims. As a result of our investigatory efforts, we filed a detailed Complaint on March 3, 2021 outlining Defendant's legal obligations and some of the communication barriers within its Websites. ECF No. 1.

24.     Unlike similar lawsuits, which rely on unreliable computer audits that few practitioners or companies understand, the Complaint described these communication barriers with real-world explanations and video documenting the communication barriers in real-time. *Id.* ¶ 42.

25.     Prior to reaching a settlement, Plaintiff filed one Motion for Extension of Time on Defendant's behalf, ECF No. 5, and Defendant filed two joint motions to the same effect. ECF Nos. 8 and 10. The Court granted these requests, extending Defendant's responsive pleading deadline to August 21, 2021.

26.     The Parties used this time to attempt to resolve Plaintiff's claims.

27.     On August 23, 2021, Plaintiff filed an Amended Class Action Complaint reasserting claims of disability discrimination on behalf of himself and a class of similarly situated persons. ECF No. 12.

28.     The Parties ultimately agreed to resolve the action on a class-wide basis and Plaintiff filed a Notice of Settlement on September 9, 2021. ECF No. 17.

## PROFESSIONAL BRACKGROUND

29.    I am licensed to practice law in the Commonwealth of Pennsylvania, and also have been admitted to practice in several federal district courts and appellate courts across the country. A list of jurisdictions in which I have been admitted is set forth below:

| |
|---|
| 3rd Circuit Court of Appeals |
| 9th Circuit Court of Appeals |
| Eastern District of Pennsylvania |
| Western District of Pennsylvania |
| Northern District of New York |
| Western District of New York |
| Northern District of Illinois |
| Eastern District of Michigan |

30.    I am in good standing in every jurisdiction in which I have been admitted to practice.

31.    I have been actively engaged in the practice of law since 2011 and have substantial class action experience and other complex litigation experience.

32.    Before founding East End Trial Group LLC in 2020, I was a Partner at Carlson Lynch LLP, a national plaintiffs-side class action law firm based in Pittsburgh, PA. The Legal Intelligencer named Carlson Lynch the Litigation Department of the Year in 2019 for work the firm did while I was a member of the Carlson Lynch team. As of today, that firm goes by the name, Lynch Carpenter.

33.    In *In Re Equifax, Inc. Customer Data Security Breach Litigation*, MDL 2800 (N.D. Ga.), I served as a committee member for a leadership team that secured a $30 million recovery for a putative class of financial institutions for injuries they suffered as a result of a massive 2017 data breach. *See* Unopposed Motion for Settlement, *In Re Equifax, Inc. Customer Data Security*

*Breach Litigation*, MDL 2800, ECF 1107 (N.D. Ga. May 15, 2020). My contributions centered on research into third-party information sources, including document requests for public filings, congressional testimony, independent news coverage, and more. As a committee member, I was the custodian of this research and bore primary responsibility for its organization and distribution.

34.    In *In Re FedLoan Student Loan Servicing Litigation*, MDL 2833 (E.D. Pa.), I served as a committee member for the leadership team prosecuting claims in the Eastern District of Pennsylvania against the United States Department of Education and one of the country's largest student loan servicers on behalf of a putative nationwide class of student loan borrowers. This committee work included investigating the factual backgrounds of many putative class representatives, identifying the common policies and practices by which they were harmed, and drafting the consolidated complaint's allegations from this information.

35.    In 2019, courts granted final approval to three class cases in which I made substantial contributions. *See, e.g.*, Declaration of G. Lynch, *Veridian Credit Union v. Eddie Bauer, LLC*, Case No. 2:17-cv-00356-JLR, ECF No. 176 (W.D. Wash. Sept. 20, 2019) (showing Mr. Tucker completed substantial work in a data breach class action in which Eddie Bauer agreed to commit more than $5 million to improve security across two years and to reimburse as many as 1.4 million financial institutions $2 for each compromised payment card);[2] Declaration of Adam J. Zapala and Andre M. Mura, *In Re: Vizio, Inc. Consumer Privacy Litigation*, Case No. 8:16-ml-02693-JLS-KES, ECF No. 308-11 (C.D. Cal. Apr. 12, 2019) (showing Mr. Tucker completed substantial work in this MDL in which Vizio agreed to change its data-collection practices and establish a settlement fund worth $17 million, effectively disgorging the value Vizio received from

---

[2] *See* Mike Curley, Law360, *Eddie Bauer Reaches $10M Settlement Over 2016 Breach*, available at https://www.law360.com/articles/1154230/eddie-bauer-reaches-10m-settlement-over-2016-breach (last visited October 12, 2021).

sharing class members' private information);[3] Declaration of Todd D. Carpenter, *Pease v. Jackson National Life Insurance Company*, Case No. 1:17-cv-00284-JTN-ESC, ECF No. 38-2 (W.D. Mich. Jan. 30, 2019) (showing Mr. Tucker performed work in this ERISA suit in which Jackson National agreed to pay $4.5 million to resolve claims it improperly profited by choosing proprietary funds for its defined contribution retirement plan at the expense of more than 5,000 plan participants).[4]

36.    In addition to litigating class actions generally, I have litigated Title III digital accessibility claims since at least 2016, helping to secure landmark decisions across the country confirming public accommodations have a legal obligation to make digital content fully and equally accessible to everyone. *See e.g. Gniewkowski v. Lettuce Entertain You Enterprises, Inc*., 251 F. Supp 908 (W.D. Pa. 2017); *Access Now, Inc. v. Otter Prods., LLC*, 280 F. Supp. 3d 287 (D. Mass. 2017); and *Access Now, Inc. v. Blue Apron, LLC*, 2017 U.S. Dist. LEXIS 185112 (D. N.H. Nov. 8, 2017); *Gathers v. 1-800-Flowers.com, Inc*., No. 17-cv-10273, 2018 U.S. Dist. LEXIS 22230 (D. Mass. Feb. 12, 2018); *Access Now, Inc. v. Sportswear, Inc*., 298 F. Supp. 3d 296 (D. Mass. 2018); and *Murphy v. Bob Cochran Motors, Inc.*, No. 1:19-cv-00239, 2020 U.S. Dist. LEXIS 139887 (W.D. Pa. Aug. 4, 2020), *adopted by, motion denied by, objection overruled by Murphy v. Bob Cochran Motors, Inc.*, 2020 U.S. Dist. LEXIS 177593 (W.D. Pa., Sept. 28, 2020).

37.    In 2021, the Western District of Pennsylvania described the advocacy attorney Kevin Abramowicz and I provided in a nearly identical case in this way:

> As to the adequacy of representation by proposed class counsel, the Court has reviewed the professional biographies of and other record materials concerning Attorneys Kevin W. Tucker, Kevin Abramowicz, and Lawrence H. Fisher of the

---

[3] Dorothy Atkins, Law360, *Vizio cuts $17M Deal To End Smart-TV Spying MDL*, available at https://www.law360.com/articles/1089511/vizio-cuts-17m-deal-to-end-smart-tv-spying-mdl (last visited Oct. 12, 2021).

[4] Danielle Nicole Smith, Law360, *Jackson National Ready To Pay $4.5M To Settle Benefits Suit*, available at https://www.law360.com/articles/1098269/jackson-national-ready-to-pay-4-5m-to-settle-benefits-suit (last visited Oct. 12, 2021).

East End Trial Group of Pittsburgh, Pennsylvania, whom Murphy has retained to protect the interests of the proposed class. The Court finds that they have the requisite education and experience to effectively represent the class. <u>Their diligent and effective representation to date and during the Parties' extensive settlement negotiations also support a finding that they can effectively represent the class and are committed to doing so. This Court is also familiar with the quality of representation the foregoing counsel provided to class plaintiffs in similar cases recently pending before this Court, and the diligence they have demonstrated in implementation of proposed settlements in those cases.</u> *See Murphy v. Charles Tyrwhitt, Inc.*, 2021 WL 21510, at \*1 (W.D. Pa. Jan. 4, 2021). Based on the above, the Court concludes that both Murphy, the proposed lead plaintiff, and Attorneys Tucker, Abramowicz, Fisher, associates and staff will fairly and adequately protect the interests of the entire class and provide capable legal representation. As a result, the adequacy prong has been satisfied.

*Eyebobs*, 2021 U.S. Dist. LEXIS 192676, at \*8-9 (emphasis added).

38.      Based on my personal experience, I believe that I, Kevin J. Abramowicz, and East End Trial Group LLC are well-equipped to negotiate the Agreement that was reached in this case. For further background, copies of my resume, and the resume of attorney Abramowicz, are attached as **Tucker Decl. Exhibit F.**

39.      Our firm undertook the representation of Mr. Giannaros in this case on terms by which our compensation was contingent and the costs advanced.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Respectfully Submitted,

Kevin Tucker (He/Him) (admitted *pro hac vice*)
EAST END TRIAL GROUP LLC
6901 Lynn Way, Ste. 215
Pittsburg, PA 15208
Tel. (412) 877-5220
Fax. (412) 626-7101
ktucker@eastendtrialgroup.com

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system on October 15, 2021 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that non-registered participants will be notified by electronic mail.

/s/ *Kevin Tucker*