**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

STEPHEN GIANNAROS,

Plaintiff,

v.

POLY-WOOD, LLC,

Defendant.

Civil Action No. 1:21-cv-10351

## ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Now pending before the Court is Plaintiff's Unopposed Motion To Certify The Class For Settlement Purposes And For Final Approval Of The Amended Class Action Settlement Agreement.

On May 10, 2022, the Court preliminarily certified the following Settlement Class:[1]

[A]ll Blind or Visually Disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who may access, attempt to access, or be deterred from attempting to access the Websites from the United States.

(Doc. 28 at ¶ 3.) The Court granted preliminary approval to the proposed class action settlement set forth in the Agreement. (*Id.*)

Following this Court's Order granting preliminary approval, the Parties executed an Amended Agreement (ECF 36-1), dated August 10, 2022.

The parties jointly moved the Court to amend its prior order and to preliminary approve the Amended Agreement. (ECF 36.)

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning set forth in the settlement agreement, which is attached hereto as Exhibit A.

Upon good cause shown, the Court preliminarily approved the Amended Agreement on August 25, 2022. (ECF 37.)

The Court held a final fairness hearing on October 27, 2022 to consider whether the terms and conditions of the Amended Agreement are fair, reasonable, and adequate, and whether the Parties' Amended Agreement should be given final approval. Having carefully considered the motion, the relevant legal authority, and the proposed Amended Agreement and all supporting documents, the Court **GRANTS FINAL APPROVAL** of the Amended Agreement as set forth below.

**<u>NOW, THEREFORE, IT IS HEREBY ORDERED THAT</u>**

1.     The Court has personal jurisdiction over the Parties, venue is proper, and the Court has subject matter jurisdiction to approve the Amended Agreement, including all exhibits thereto, to enter this Final Approval Order.

2.     The proposed Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a) and (b)(2) for purposes of settlement. The Settlement Class is defined as:

> [A]ll Blind or Visually Disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who may access, attempt to access, or be deterred from attempting to access the Websites from the United States.

3.     The Court appoints and designates Plaintiff Stephen Giannaros as representative of the Settlement Class.

4.     The Court finds Kevin Tucker and Kevin Abramowicz are experienced and competent class action counsel who fairly and adequately protected the interests of the putative class throughout this litigation and appoints them as Class Counsel for the Settlement Class.

5.     The Amended Agreement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of this litigation (the "Lawsuit") and of

the strengths and weaknesses of their respective positions. The Amended Agreement was reached after the Parties engaged in extensive settlement discussions. Counsel for the Parties were therefore well-positioned to evaluate the benefits of the Amended Agreement, taking into account the expense, risk, and uncertainty of protracted litigation.

6.      The Court finds that the distribution of the Class notice, as provided for in the Amended Agreement, (i) constituted the best practicable notice under these circumstances to Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of, among other things, the pendency of the Lawsuit, the nature and terms of the Amended Agreement, their right to object to the Amended Agreement, and their right to appear at the Fairness Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.

7.      The Amended Agreement is finally approved in all respects as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e). The terms and provisions of the Amended Agreement have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties.

8.      The Parties are hereby directed to implement the Amended Agreement according to its terms and provisions.

9.      Upon entry of this Final Approval Order, the Injunctive Releasing Parties shall, by operation of this Order Granting Final Approval of Class Action Settlement, fully and finally release, acquit, and discharge Defendant from the Released Injunctive Claims as set forth in the Amended Agreement.

10.     Pursuant to this Release, Plaintiff and all Settlement Class Members are, from this day forward, hereby enjoined from asserting any Released Injunctive Claims through the Amended Agreement Term.

11.     Notwithstanding this release, Plaintiff and the Settlement Class Members may fully utilize the Dispute Resolution Procedure during the Amended Agreement Term.

12.     The Parties shall move to dismiss the Lawsuit with prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure no later than forty-five (45) days following the date of Final Approval, or twenty (20) days following the date of Defendant's payment of fees pursuant to the Amended Agreement, whichever occurs later. Pursuant to *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994), the Parties' joint motion shall request that the Court's dismissal order expressly retain the Court's jurisdiction to enforce the Amended Agreement against all Parties.

Entered and Ordered this  27th  day of  October   , 2022.

  /s/ William G. Young
WILLIAM G. YOUNG
United States District Court Judge

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STEPHEN GIANNAROS, | |
| Plaintiff, | Civil Action No. 1:21-cv-10351 |
| v. | |
| POLY-WOOD, LLC, | |
| Defendant. | |

**AMENDED CLASS ACTION SETTLEMENT AGREEMENT**

Table of Contents

1.  Introduction ..................................................................................................... 1

2.  Definitions ....................................................................................................... 2

3.  Conditions Precedent ...................................................................................... 5

4.  Poly-Wood Shall Make Its Digital Properties Accessible .................................. 6

5.  Third-Party Content ........................................................................................ 6

6.  Accessibility Coordination Team ..................................................................... 6

7.  Accessibility Consultant and Status Report ..................................................... 7

8.  Accessibility Audit .......................................................................................... 7

9.  Accessibility Strategy ...................................................................................... 8

10. Accessibility Statement ................................................................................... 8

11. Accessibility Training ...................................................................................... 10

12. Accessibility Support ....................................................................................... 10

13. Semi-Annual Accessibility Audit ..................................................................... 11

14. Annual End-User Accessibility Testing ............................................................ 11

15. Agreement Term .............................................................................................. 11

16. Monitoring and Compliance ............................................................................ 12

17. Poly-Wood's Reporting Schedule .................................................................... 12

18. Scope of Agreement ........................................................................................ 13

19. Incentive Award to Named Plaintiff ................................................................ 13

20. Annual Report and Meet-and-Confers ............................................................ 14

21. Dispute Resolution Procedure ........................................................................ 14

22. Attorneys' Fees and Costs .............................................................................. 15

23. Preliminary Approval, Objections, and Fairness Hearing ................................ 16

24. Notice ............................................................................................................. 16

25.    Judgment, Final Approval, and Dismissal ........................................................ 18

26.    No Admission of Liability  ............................................................................... 18

27.    Terms Not Confidential; Non-Disparagement.................................................. 18

28.    Release ............................................................................................................. 18

29.    Entire Agreement ............................................................................................. 19

30.    Modification..................................................................................................... 19

31.    Severability ...................................................................................................... 19

32.    Excused Performance........................................................................................ 19

33.    Court Decisions................................................................................................. 19

34.    Subsequent Regulations ................................................................................... 19

35.    Drafting of this Agreement .............................................................................. 19

36.    Execution in Counterparts................................................................................ 20

37.    Continuing Jurisdiction.................................................................................... 20

38.    Deadlines........................................................................................................... 20

39.    Communications to Named Plaintiff, Class Counsel, the Settlement Class,
       and Poly-Wood ................................................................................................. 20

<u>Settlement Agreement</u>

1.    **Introduction.** This Agreement (all capitalized terms have the meanings set forth in Section 2) is entered into by and between Poly-Wood and Named Plaintiff, individually and on behalf of the Settlement Class.

    1.1.    Poly-Wood, operates, and controls the Websites, which are open to consumers in the United States through the internet.

    1.2.    This Agreement applies to the Websites, New Websites and Mobile Apps, and Subsequently Acquired Websites and Mobile Apps, but not Subsequently Abandoned Websites and Mobile Apps.

    1.3.    Named Plaintiff uses screen reader auxiliary aids to access digital information and is a person with a disability as that term is used in the ADA. Named Plaintiff has attempted to patronize the Websites and intends to do so again in the future.

    1.4.    On or about March 3, 2021, Plaintiff Stephen Giannaros filed this Lawsuit, in which Plaintiff asserted that Poly-Wood does not have, and has never had, adequate corporate policies and practices that are reasonably calculated to cause the Websites to be fully accessible to Blind or Visually Disabled individuals, in violation of the ADA.

    1.5.    On or about August 23, 2021, Named Plaintiff filed an Amended Class Action Complaint, reasserting his claims of disability discrimination on behalf of a class of similarly situated persons.

    1.6.    Poly-Wood denies Plaintiff's allegations and denies that the Websites violate the ADA, but the Parties nevertheless wish to affect a complete resolution and settlement of all claims, disputes and controversies relating to the allegations of Named Plaintiff and the Settlement Class, and to resolve their differences and disputes by settling the Lawsuit.

    1.7.    The terms of all exhibits attached hereto are fully incorporated into this Agreement and are an integral part thereof. The terms of this Agreement, where applicable, are fully incorporated into all exhibits and are, where applicable, an integral part thereof. To the extent that there are any conflicts or inconsistencies between the terms of this Agreement and any of the exhibits, the terms of the Agreement shall control.

    1.8.    This Agreement and all exhibits are binding on Poly-Wood's subsidiaries, successors and assigns.

2.    **Definitions.**

2.1.    **"Accessible" or "Accessibility"** means to make available digital content to the average Blind or Visually Disabled user who is reasonably proficient in the use of the specific assistive device, if any, that they use to access the digital content in a manner that provides reasonable effective communication, generally in accordance with the success criteria of the WCAG 2.1, to the extent Commercially Reasonable.

2.2.    **"Accessibility Audit"** means the initial audit of the Websites required by Section 8 of this Agreement.

2.3.    **"Accessibility Coordination Team"** means the team designated by Poly-Wood to serve the purposes of Section 6 of this Agreement.

2.4.    **"Accessibility Consultant"** means the person or company designated by Poly-Wood to serve the purposes of Section 7 of this Agreement.

2.5.    **"Accessibility Statement"** means the statement required by Section 10 of this Agreement that must demonstrate Poly-Wood's commitment to implementing accessible services to blind and visually disabled individuals.

2.6.    **"Accessibility Strategy"** means the corrective action strategy required by Section 9 of this Agreement.

2.7.    **"ADA"** means Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.*, and its implementing regulations.

2.8.    **"Agreement"** means this agreement and the exhibits attached hereto.

2.9.    **"Agreement Term"** means the time from the Effective Date through the end of two (2) years from the Effective Date.

2.10.    **"Annual Report"** means the document that Poly-Wood shall submit to to Class Counsel on the Effective Date's anniversary date during the Agreement Term, stating the status of the implementation of the Agreement and identifying any outstanding issues on which the Parties are then in disagreement.

2.11.    **"Blind or Visually Disabled"** means, with respect to an individual, a physical impairment that substantially limits the major life activity of seeing, pursuant to the ADA, 42 U.S.C. § 12102(1)-(2).

2.12.    **"Class Counsel"** means Kevin W. Tucker and Kevin Abramowicz of East End Trial Group LLC.

2.13.   **"Commercially Reasonable"** means, with respect to a given obligation, the commercially reasonable efforts that a reasonable person in Poly-Wood's position would use to achieve the obligation and, with respect to the Websites, shall mean reasonable efforts to improve the existing level of accessibility of the Websites without fundamentally altering the services or products offered by Poly-Wood. Commercially Reasonable shall be interpreted so as not to require Poly-Wood to undertake efforts whose cost, difficulty or impact on the Websites constitutes an undue burden as defined in 28 C.F.R. § 36.104.

2.14.   **"Costs"** means all out-of-pocket expenses reasonably incurred and shall include (but not be limited to) amounts payable to experts.

2.15.   **"Court"** means United States District Court for the District of Massachusetts.

2.16.   **"Digital Properties"** means the Websites, New Websites and Mobile Apps, and Subsequently Acquired Websites and Mobile Apps.

2.17.   **"Dispute Resolution Procedure"** means the process described in Section 22 hereof.

2.18.   **"Effective Date"** means the date on which all conditions precedent set forth in Section 3 of this Agreement are completed.

2.19.   **"Final Approval"** means approval given in a written order to this Agreement by a United States District Court Judge or Magistrate of competent jurisdiction after notice to the Settlement Class and Hearing.

2.20.   **"Injunctive Releasing Parties"** means Named Plaintiff and all Settlement Class Members, and each of their executors, successors, heirs, assigns, administrators, agents, and representatives.

2.21.   **"Lawsuit"** means *Giannaros v. Poly-Wood, LLC*, Case No. 1:21-cv-10351 (D. Mass.).

2.22.   **"Letter of Reasonable Accessibility"** means the letter issued by the Accessibility Consultant that identifies why the Websites are reasonably Accessible, explaining the testing standards, testing for diverse abilities, identified discovered issues and plans for addressing them.

2.23.   **"Named Plaintiff"** means Stephen Giannaros.

2.24.  **"New Websites and Mobile Apps"** means any website or mobile application that Poly-Wood develops, starts to operate, and which is publicly available to consumers in the United States after the Effective Date of this Agreement.

2.25.  **"Notice Deadline"** means the deadline for publishing notice to be set by the Court as part of the Preliminary Approval process.

2.26.  **"Party"** refers to Poly-Wood, Named Plaintiff, or the Settlement Class.

2.27.  **"Parties"** refers to Poly-Wood, Named Plaintiff, and the Settlement Class.

2.28.  **"Poly-Wood"** means Poly-Wood, LLC.

2.29.  **"Poly-Wood Parties"** means Poly-Wood and its present and former parents and subsidiaries and each of their respective present, former, or future officers, directors, employees, shareholders, administrators, executors, affiliates, successors, and assigns.

2.30.  **"Poly-Wood Personnel"** means all persons who are employed by Poly-Wood and who have managerial responsibility for the design and development of the Websites, New Websites and Mobile Apps, and Subsequently Acquired Websites and Mobile Apps.

2.31.  **"Preliminary Approval"** means the initial approval by the Court of the terms of this Agreement, which will occur before any notice being provided in accordance with this Agreement.

2.32.  **"Released Injunctive Claims"** means any and all claims, rights, demands, charges, complaints, actions, suits and causes of action, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for injunctive, declaratory, or non-monetary relief against Poly-Wood Parties, based on the Accessibility of the Digital Properties to persons who are limited in the life activity of seeing and who use screen reader auxiliary aids to access digital information, including any injunctive, declaratory, or non-monetary claims under: (i) the ADA; and (ii) any other federal, state or local statutory, administrative, regulatory, or code provisions that either (a) directly incorporates the ADA or (b) sets forth standards or obligations coterminous with or equivalent to the ADA. As to Named Plaintiff, "Released Injunctive Claims" also includes claims under any federal, state or local statutory, administrative, regulatory or code provisions relating to accessibility or prohibiting discrimination by a public accommodation with respect to the accessibility or inaccessibility of the Digital Properties. The "Released Injunctive Claims" cover

all conduct concerning the Accessibility of the Digital Properties through the Agreement Term.

2.33.    **"Settlement Class"** or **"Settlement Class Members"** means a national class including all Blind or Visually Disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from accessing the Websites from the United States.

2.34.    **"Status Report"** means a written evaluation that (a) identifies content, features, and services on the Digital Properties that are not Accessible to individuals who use screen reader auxiliary aids, and (b) recommends steps Poly-Wood must take to ensure their remediation.

2.35.    **"Subsequently Abandoned Websites and Mobile Apps"** means any website or mobile application, including the Digital Properties that Poly-Wood ceases to operate or make available to consumers in the United States after the Effective Date of this Agreement.

2.36.    **"Subsequently Acquired Websites and Mobile Apps"** means any website or mobile application that Poly-Wood acquires from a third party, starts to operate, and which is publicly available to consumers in the United States after the Effective Date of this Agreement.

2.37.    **"Third-Party Content"** means content that is not developed or 100% owned by Poly-Wood.

2.38.    **"WCAG 2.1"** means Web Content Accessibility Guidelines 2.1.

2.39.    **"Websites"** means the digital properties located at https://www.polywood.com/, https://www.ivyterracefurniture.com/, and https://www.trexfurniture.com/.

**3.**    **Conditions Precedent.** This Agreement shall be conditioned and effective only upon the occurrence of all of the following events:

3.1.    The Court grants Preliminary Approval of this Agreement, and orders certification of the Settlement Class and notice to the Settlement Class Members.

3.2.    Notice is provided to the Settlement Class in accordance with Section 26 of this Agreement.

3.3.    The Court grants Final Approval of this Agreement and enters Judgment in accordance with the terms set forth herein after a fairness hearing has been

conducted, and all such orders and approvals have become final and non-appealable.

4.    **Poly-Wood Shall Make Its Digital Properties Accessible.** Poly-Wood shall ensure Blind or Visually Disabled individuals full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Digital Properties as provided for in this Section:

4.1.    Within thirty-six (36) months of the Effective Date, or by the end of the Agreement Term, Poly-Wood shall ensure the U.S. portion of the Websites is Accessible.

4.2.    Poly-Wood shall ensure the U.S. portion of any New Websites and Mobile Apps is Accessible at the time of their release.

4.3.    Poly-Wood shall ensure the U.S. portion of Subsequently Acquired Websites and Mobile Apps is Accessible within eighteen (18) months of their acquisition.

5.    **Third-Party Content.**

5.1.    Poly-Wood shall not be required to ensure Third Party Content is Accessible; provided however, Poly-Wood shall make Commercially Reasonable efforts to ensure that such Third-Party Content is made Accessible to the extent necessary for Blind or Visually Disabled persons to complete a purchase, like a payment processor, or contact customer service, like an instant messenger.

5.2.    After the Effective Date of this Agreement, for each new, renewed, or renegotiated contract with a vendor of Third-Party Content to be placed on Poly-Wood's Digital Properties (as opposed to links to third-party content, such as links to a map to a location or distributor), Poly-Wood shall request that the vendor provide Accessible content. If during this contracting process Poly-Wood issues a request for proposal for development or inclusion of Third-Party Content on the Digital Properties, then Poly-Wood shall include Accessibility as a criterion. For Third-Party Content that is not subject to a written contract, Poly-Wood shall seek out such content that provides Accessibility.

5.3.    If, after following the process set forth in this Section, Poly-Wood is unable to confirm Accessible Third-Party Content, it shall advise Class Counsel, annually consistent with Section 20.

6.    **Accessibility Coordination Team.**

6.1.    Within six (6) months of the Effective Date of this Agreement, Poly-Wood shall designate an employee or a group of employees as the Accessibility Coordination

Team for the Digital Properties. Poly-Wood shall report on this designation on the Annual Report provided to Class Counsel on the first anniversary of the Effective Date of this Agreement.

6.2.  The Accessibility Coordination Team shall be responsible for coordinating Poly-Wood's compliance with Sections 4 through 15 of this Agreement.

6.3.  Poly-Wood shall maintain the Accessibility Coordination Team through at least the Agreement Term.

**7.  Accessibility Consultant and Status Report.**

7.1.  Within nine (9) months of the Effective Date of this Agreement, Poly-Wood shall appoint or retain an Accessibility Consultant knowledgeable about digital accessibility, the ADA, and Accessibility.  Poly-Wood shall inform Plaintiff of its selection of an Accessibility Consultant.  Should Plaintiff object to Poly-Wood's selection, the parties will work in good faith to resolve Plaintiff's objection subject to the Dispute Resolution provisions in Section 21 below.

7.2.  The Accessibility Consultant's duties shall include: (a) assisting Poly-Wood to conduct an Accessibility Audit of the Websites; (b) advising Poly-Wood on how to make the Websites Accessible; (c) verifying that the Websites are Accessible by the end of the Agreement Term; (d) verifying that any New Websites and Mobile Apps, and any Subsequently Acquired Websites and Mobile Apps, are Accessible; and (e) verifying compliance with sections 5.2 and 5.3, above.

7.3.  Before each anniversary date of the Effective Date of this Agreement, the Accessibility Consultant shall provide Poly-Wood with a Status Report. In the Status Report, the Accessibility Consultant shall (a) identify content, features, and services on the Digital Properties that are not Accessible to individuals who use screen reader auxiliary aids, and (b) recommend steps Poly-Wood must take to ensure Accessibility.

7.4.  Poly-Wood shall include a copy of the Status Report as an exhibit to the Annual Report provided to Class Counsel on the anniversary of the Effective Date during the Agreement Term.

7.5.  Within three (3) months of any change, Poly-Wood shall notify Class Counsel if it appoints or retains a new Accessibility Consultant during the Agreement Term.

**8.  Accessibility Audit.**

8.1.    Within twelve (12) months of the Effective Date of this Agreement, Poly-Wood shall complete the Accessibility Audit.

8.2.    The Accessibility Audit shall be conducted in a professional manner and shall be benchmarked by appropriate processes, including automated and end-user testing, consistent with the Accessibility Consultant's recommendations.

8.3.    Poly-Wood shall provide a copy of a report on the Accessibility Audit as an exhibit to the Annual Report due to Class Counsel on the first anniversary of the Effective Date.  If the report is not available at that time, Poly-Wood will supplement the Annual report within two (2) months to provide the report on the Accessibility Audit.

9.    **Accessibility Strategy.**

9.1.    Within eighteen (18) months of the Effective Date of this Agreement, Poly-Wood shall develop and implement an Accessibility Strategy designed to ensure the Digital Properties are or will be Accessible within the Agreement Term. In creating the Accessibility Strategy, Poly-Wood may avail itself of any provision applicable under DOJ consent decrees and other agency statements, and of any applicable court decisions, local laws, rules, regulations, and standards that relate to website accessibility.

9.2.    Poly-Wood shall consider the agreements reached in this Agreement, the Accessibility Audit, the Accessibility Statement, and the recommendations and Status Reports of the Accessibility Consultant when implementing the Accessibility Strategy.

9.3.    As part of the Accessibility Strategy, Poly-Wood shall ensure that a process is in place going forward to remediate any bugs that create Accessibility barriers to the Digital Properties with the same level of priority (e.g., speed, resources used to remediate) as any other equivalent loss of function for individuals without disabilities.  The Parties recognize that bugs that create a loss of function for all users or that result in incorrect information or processes for all users have the highest priority.

9.4.    Within eighteen (18) months of the Effective Date of this Agreement, Poly-Wood shall provide a copy of the Accessibility Strategy to Class Counsel.

9.5.    Within eighteen (18) months of the Effective Date of this Agreement, Poly-Wood shall disseminate the Accessibility Strategy among Poly-Wood Personnel.

10.    **Accessibility Statement.**

10.1.    Within twelve (12) months of the Effective Date of this Agreement, Poly-Wood shall develop and post an Accessibility Statement on the Websites, as described in 10.4 below. The Accessibility Statement shall be posted on New Websites and Mobile Apps and on any Subsequently Acquired Websites and Mobile Apps, as described in 10.5 and 10.6 below.

10.2.    The Accessibility Statement shall at minimum, (a) state that Poly-Wood is making efforts to maintain and increase access to the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Websites, and that may be provided by and through any New Websites and Mobile Apps or Subsequently Acquired Websites and Mobile Apps; (b) solicit feedback from visitors to Poly-Wood's Digital Properties on how the accessibility of these properties can be improved; and (c) include an Accessible means of submitting accessibility questions and problems, including a toll-free telephone number, and an email address to provide feedback about the Accessibility Statement and the Digital Properties.

10.3.    Within nine (9) months of the Effective Date of this Agreement, Poly-Wood shall provide a copy of the Accessibility Statement to Class Counsel.

10.4.    For any Digital Properties existing as of the Effective Date, Poly-Wood shall provide a link to the Accessibility Statement within twelve (12) months of the Effective Date: (i) at the top of each homepage of any Digital Properties existing as of the Effective Date; (ii) via hidden text (only viewable by screen reader software) located at the top of each homepage throughout the Digital Properties; or (iii) through a substantially equivalent method of conveying the Accessibility Statement at the beginning of a screen reader user's experience on the Digital Properties, such as by using index values placed on aria labels so that screen readers perceive the link to the Accessibility Statement as if it were located at the top of each homepage throughout the Digital Properties. This link shall include alternative text which reads, "Click to view our Accessibility Statement or contact us with accessibility-related questions.".

10.5.    For any New Websites and Mobile Apps, Poly-Wood shall provide a link to the Accessibility Statement at the time of their release: (i) at the top of each homepage of the New Websites and Mobile Apps; (ii) via hidden text (only viewable by screen reader software) located at the top of each homepage of the New Websites and Mobile Apps; or (iii) through a substantially equivalent method of conveying the Accessibility Statement at the beginning of a screen reader user's experience on the New Websites and Mobile Apps, such as by using index values placed on aria labels so that screen readers perceive the link to the Accessibility Statement as if it were

located at the top of each homepage of the New Websites and Mobile Apps. This link shall include alternative text which reads, "Click to view our Accessibility Statement or contact us with accessibility-related questions.".

10.6.    For any Subsequently Acquired Websites and Mobile Apps, Poly-Wood shall provide a link to the Accessibility Statement within six (6) months of their acquisition: (i) at the top of each homepage of the Subsequently Acquired Websites and Mobile Apps; (ii) via hidden text (only viewable by screen reader software) located at the top of each homepage of the Subsequently Acquired Websites and Mobile Apps; or (iii) through a substantially equivalent method of conveying the Accessibility Statement at the beginning of a screen reader user's experience on the Subsequently Acquired Websites and Mobile Apps, such as by using index values placed on aria labels so that screen readers perceive the link to the Accessibility Statement as if it were located at the top of each homepage of the Subsequently Acquired Websites and Mobile Apps. This link shall include alternative text which reads, "Click to view our Accessibility Statement or contact us with accessibility-related questions.".

10.7.    The Annual Report shall state the status of the implementation of Section 10.

## 11.    Accessibility Training.

11.1.    Within eighteen (18) months of the Effective Date of this Agreement, Poly-Wood shall use reasonable efforts to train all employees responsible for website and mobile application design, development, and maintenance to ensure future design, development, and maintenance of the Digital Properties to ensure the Digital Properties are and remain Accessible.

11.2.    Poly-Wood shall provide refresher accessibility training on an annual basis commencing no more than twelve (12) months after the training provided to comply with 11.1 above.

11.3.    During the Agreement Term and consistent with the annual reporting requirements set forth in Section 20, below, Poly-Wood shall provide copies of accessibility training material to Class Counsel.

## 12.    Accessibility Support.

12.1.    Within eighteen (18) months of the Effective Date of this Agreement, Poly-Wood shall provide support during regular business hours to help Blind or Visually Disabled individuals resolve accessibility issues encountered while using the Digital Properties. Poly-Wood shall train those designated to provide such support

to review, handle, or escalate accessibility related questions and comments generated by the toll-free telephone number, and email address published in the Accessibility Statement of the Websites.

12.2.   Should any complaint or issue that concerns or relates to compliance with the terms of this Agreement be made through the accessibility support personnel, said complaint or issue shall be forwarded to the Accessibility Coordination Team. The Accessibility Coordination Team shall (1) forward the complaint or issue to the Accessibility Consultant so that the complaint or issue can be investigated and resolved, if necessary, in accordance with this Agreement, and (2) ensure that the Blind or Visually Disabled individual is provided appropriate customer support based on the nature of the issue or concern raised.

**13.    Semi-Annual Accessibility Audit.**

13.1.   During the Agreement Term, Poly-Wood, or a consultant retained on its behalf, shall perform an automated accessibility audit semi-annually (twice per year) to evaluate whether the Digital Properties are Accessible. These accessibility audits shall begin six (6) months after the initial Accessibility Audit conducted in accordance with Section 8.

13.2.   Poly-Wood shall forward the results of the semi-annual automated accessibility audit to Class Counsel as part of Poly-Wood's Annual Report or semi-annual Letter of Reasonable Accessibility, whichever is next due following the date Poly-Wood completed the semi-annual automated accessibility audit.

**14.    Annual End-User Accessibility Testing.**

14.1.   After the initial Accessibility Audit conducted in accordance with Section 8, during the Agreement Term, the Accessibility Consultant shall perform annual accessibility/usability testing, with said testing to be performed by Blind or Visually Disabled individuals, or who have training and experience in the manner in which Blind or Visually Disabled individuals use a screen reader to navigate, browse, and conduct business online, to evaluate whether the Digital Properties are Accessible.

14.2.   Poly-Wood shall forward the results of the annual end-user accessibility testing to Class Counsel as part of Poly-Wood's Annual Report or semi-annual Letter of Reasonable Accessibility, whichever is next due following the date Poly-Wood completed the annual end-user accessibility testing.

**15.    Agreement Term.** The Agreement Term shall be three (3) years from the Effective Date.

16.     **Monitoring and Compliance.** Class Counsel and Named Plaintiff shall monitor Poly-Wood's compliance with Sections 4 through 15 as more fully described in this paragraph.

    16.1.   Class Counsel and Named Plaintiff shall be entitled to visit the Digital Properties at any time without notice for the purpose of evaluating compliance with Sections 4 through 15.  Should Class Counsel and Named Plaintiff identify critical issues in such monitoring, Class Counsel and Named Plaintiff agree to share those issues with Poly-Wood and provide Poly-Wood with adequate time to address those issues in accordance with the timeframes outlined in this Agreement.

17.     **Poly-Wood's Reporting Schedule.** Poly-Wood shall provide the following information to Class Counsel during the Agreement Term.

| Information | Deadline | See Agreement at Section |
|---|---|---|
| Annual Report | The Effective Date's anniversary date during the Agreement Term | 2.10 |
| Letter of Reasonable Accessibility | Every six (6) months following the Effective Date during the Agreement Term | 2.22 |
| Third-Party Content that Poly-Wood cannot confirm is Accessible | To be included in the Annual Report | 5.3 |
| Confirmation that Poly-Wood has designated the Accessibility Coordination Team | 6 months of the Effective Date | 6.1 |
| Confirmation that Poly-Wood has appointed or retained an Accessibility Consultant | 9 months of the Effective Date | 7.1 |
| The Accessibility Consultant's Status Report | To be included in the Annual Report | 7.4 |
| Changes to the Accessibility Consultant | 3 months of the change | 7.5 |
| Accessibility Audit | To be included as an exhibit to the Annual | 8.3 |

| | Report due on the first anniversary of the Effective Date | |
|---|---|---|
| Accessibility Strategy | 18 months of the Effective Date | 9.4 |
| Accessibility Statement | 9 months of the Effective Date | 10.3 |
| Status of Accessibility Statement | To be included in the Annual Report | 10.7 |
| Accessibility Training Material | To be included in the Annual Report | 11.3 |
| The results of Poly-Wood's semi-annual accessibility audit | To be included in the Annual Report or Letter of Reasonable Accessibility, whichever is next due | 13.2 |
| Annual end-user accessibility testing results | To be included in the Annual Report or Letter of Reasonable Accessibility, whichever is next due | 14.2 |

**18.** **Scope of Agreement.**

18.1.    The provisions of this Agreement shall apply to Poly-Wood's policies, practices, and procedures with respect to Blind or Visually Disabled individuals within the United States who use screen reader auxiliary aids to access the Digital Properties.

18.2.    The provisions of this Agreement shall not apply to Subsequently Abandoned Websites and Mobile Apps.

18.3.    Named Plaintiff expressly agrees that the resolution described herein is fair and adequate, and that the policies and procedures set forth in this Agreement are intended to remedy any and all alleged violations of the ADA and related state and local laws by Poly-Wood with respect to the claims alleged by Named Plaintiff in this case.

**19.** **Incentive Award to Named Plaintiff.**

19.1.    Subject to Court approval, Poly-Wood shall pay the Named Plaintiff an incentive award in the amount of One Thousand Dollars and Zero Cents ($1,000.00).

19.2.   Named Plaintiff waives any right to an incentive award in connection with this matter which exceeds the amount provided in Section 19.1.

19.3.   Poly-Wood shall pay the amount provided in Section 19.1, or One Thousand Dollars and Zero Cents ($1,000.00), within thirty (30) days of the Effective Date by sending a business check or wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" to Class Counsel in care of Kevin W. Tucker, East End Trial Group, LLC, at an address or account to be confirmed by Class Counsel before payment.

19.4.   The Incentive Award shall not be subject to withholding deductions and Poly-Wood may issue an IRS Form 1099 to Named Plaintiff, through Class Counsel at the address provided for notice below.

**20.     Annual Report and Meet-and-Confers.**

20.1.   During the Agreement Term, on the Effective Date's anniversary date, Poly-Wood shall submit a report to Class Counsel, stating the status of the implementation of this Agreement.

20.2.   At Class Counsel's written request, Class Counsel and Poly-Wood or its counsel will meet to discuss the Annual Report and review the implementation of this Agreement. Such meetings may be either in person or by telephone, as the Parties agree.

**21.     Dispute Resolution Procedure.** The Parties shall address disputes relating to any of the provisions of this Agreement as follows.

21.1.   Informal Dispute Resolution.

21.1.1.     If either Party believes that a dispute exists relating to any Section of this Agreement, it shall notify the other Party in writing, describing the dispute. The other Party shall respond in writing to such notice within fifteen (15) business days of receipt of the notice.

21.1.2.     If a Settlement Class Member believes a dispute exists relating to any Section of this Agreement, they may notify Class Counsel who, in turn, shall notify Poly-Wood in writing, describing the dispute. Poly-Wood shall respond in writing to such notice within fifteen (15) business days of receipt of the notice.

21.1.3.     Further, if Poly-Wood is informed of a dispute relating to the provisions of this Agreement by a Settlement Class Member, it shall

notify Class Counsel in writing, describing the dispute and providing the Settlement Class Member's contact information, if known. Poly-Wood shall respond to the dispute in writing within fifteen (15) business days of receipt of the notice. The response shall be directed to Class Counsel.

21.1.4.    Within fifteen (15) business days of receipt of the response described in Section 21.1.1, 21.1.2, or 21.1.3, counsel for both Parties shall meet and confer by telephone or in person and attempt to resolve the issue informally. The Parties may agree to enter mediation on the issue in dispute.

21.2.    Submission to Mediation.

21.2.1.    In the event that the Parties are unable to resolve their dispute through such meet-and-confer negotiations, then within forty-five (45) days of receipt of the letter raising the dispute, the dispute shall be submitted to mediation before a mutually-agreed upon mediator in Boston, Massachusetts, Pittsburgh, Pennsylvania or such other location as may be mutually agreed between the parties. The mediation may be conducted electronically. The Parties shall split the cost of the mediation. If Poly-Wood declines to pay such costs, Named Plaintiff may submit the dispute to the Court.

21.3.    Submission to the Court.

21.3.1.    If the meet-and-confer process and mediation pursuant to Sections 21.1 and 21.2 above do not result in a resolution of the dispute within a reasonable time, any Party may make a motion for resolution of the dispute by the United States District Court Judge assigned to the case.

21.3.2.    In the event either Party finds that it is necessary to seek resolution of the dispute by the Court, the Court shall award reasonable attorneys' fees and costs incurred in pursuing dispute resolution as set forth in this Section 21.3 of the Agreement in accordance with the prevailing party standards under the ADA.

**22.    Attorneys' Fees and Costs.**

22.1.    Subject to Court approval, Poly-Wood shall pay Named Plaintiff's reasonable attorneys' fees and Costs incurred in connection with this matter in the amount of

forty-nine thousand dollars and zero cents ($49,000.00).  Class counsel shall provide Poly-Wood with a current W-9 and any further documentation or information necessary to allow it to meet its payment obligations herein.

22.2.   Named Plaintiff waives any right to reasonable attorneys' fees and Costs incurred in connection with this matter up to and including the Effective Date of this Agreement which exceed the amount provided in Section 22.1.

22.3.   Poly-Wood shall pay the amount provided in Section 22.1 within thirty (30) days of Final Approval by sending a business check or wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" to Class Counsel in care of Kevin W. Tucker, East End Trial Group, LLC, at an address or account to be confirmed by Class Counsel before payment.

23. **Preliminary Approval, Objections, and Fairness Hearing.**

23.1.   Promptly after execution of this Agreement, Named Plaintiff shall request that the Court schedule a preliminary approval hearing within fourteen (14) days of the request or as soon thereafter as the Court may set the hearing and that the Court preliminarily approve the Agreement, preliminarily enjoin Settlement Class Members from bringing any claims to be released pursuant to this Agreement, and approve the proposed form of Notice and plan for providing notice submitted by the Parties.

23.2.   Named Plaintiff shall ask the Court to schedule a fairness and final approval hearing for ninety (90) days after the Notice Deadline set by the Court, or as soon thereafter as the Court may set the hearing.

23.3.   Named Plaintiff shall ask the Court to order Named Plaintiff to file a Motion for Reasonable Attorney's Fees and Costs, consistent with Sections 22, within forty-five (45) days after the Notice Deadline set by the Court.

23.4.   Named Plaintiff shall ask the Court to order the following procedures for objections: Any Settlement Class Member may object to the proposed Agreement by filing, within sixty (60) days after the Notice Deadline set by the Court, written objections with the Clerk of the Court. Only such objecting Settlement Class Members shall have the right, and only if they expressly seek it in their objection, to present objections orally at the Fairness Hearing. Responses by Named Plaintiff to any timely-filed objections shall be made no less than five (5) days before the Fairness Hearing.

24.   **Notice.** As soon as practicable, but no later than twenty-one (21) days after the Court's

entry of a Preliminary Approval Order, Poly-Wood shall at its expense:

24.1.  Cause a stipulated class action settlement notice to be published on a search-engine-optimized ("SEO") settlement website, located at www.polywoodadasettlement.com, that is operated by a stipulated class action settlement administrator or similar entity.

24.2.  Poly-Wood shall publish an accessible version of the Notice attached to the Agreement as Exhibit A on the settlement website located at www.polywoodadasettlement.com.

24.3.  Provide a link to www.polywoodadasettlement.com: (i) at the top of each homepage of the Digital Properties; (ii) via hidden text (only viewable by screen reader software) located at the top of each homepage of the Digital Properties; or (iii) through a substantially equivalent method of conveying the settlement website at the beginning of a screen reader user's experience on the Digital Properties, such as by using index values placed on aria labels so that screen readers perceive the link to the settlement website as if it were located at the top of each homepage of the Digital Properties. This link shall include alternative text which reads, "Click to view our digital accessibility class action settlement."

24.4.  Class Counsel shall also request the following organizations publish notice in the form of Section 24.5 in their respective electronic newsletters so the notice is sent out within sixty (60) days of Preliminary Approval. Class Counsel shall copy Poly-Wood on each request at the addresses provided in Section 39.1.

(1)  American Council of the Blind,
(2)  American Foundation for the Blind,
(3)  Blinded American Veterans Foundation,
(4)  Blinded Veterans Association,
(5)  Foundation Fighting Blindness,
(6)  Civil Rights Education and Enforcement Center,
(7)  Disability Law Center,
(8)  Disability Rights Education and Defense Fund,
(9)  ACHIEVA, and
(10) National Federation of the Blind.

24.5.  "A proposed settlement has been reached that would resolve the class action lawsuit *Giannaros v. Poly-Wood*, No. 1:21-cv-10351 (D. Mass.). The lawsuit alleges that Poly-Wood violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. by failing to take the necessary steps to ensure its Websites do not discriminate against blind or visually disabled consumers who use screen reader auxiliary aids

to access digital content. Poly-Wood denies the allegations. Under the settlement, Poly-Wood agrees to take additional steps to make its websites, mobile apps, and any new website or mobile app it develops or acquires Accessible to screen reader users. For a more complete summary of the terms of the proposed settlement, please visit www.polywoodadasettlement.com."

25.    **Judgment, Final Approval, and Dismissal.**

25.1.    Class Counsel and Named Plaintiff shall request that the Court enter a Final Judgment and Order granting Final Approval of this Agreement and enjoining Settlement Class Members from asserting any Released Injunctive Claims. Among other things, the Final Judgment and Order shall attach this Agreement as an exhibit and shall provide that the Court retains jurisdiction through the Agreement Term in order to enforce this Agreement.

25.2.    This Lawsuit shall be dismissed with prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure, no later than thirty (30) days following the expiration of the Agreement Term.

26.    **No Admission of Liability.** By agreeing to and voluntarily entering into this Agreement, there is no admission or concession by Poly-Wood, direct or indirect, express or implied, that the Websites are in any way inaccessible or that Poly-Wood has violated the ADA, or any other federal, state, or local law, code, regulation, order, or rule. Nothing in this Agreement shall operate as an admission by Poly-Wood in any context other than within the settlement of this Lawsuit that any particular standard or standards are applicable under the ADA or any other federal or state law to the Websites.

27.    **Terms Not Confidential; Non-Disparagement.**

27.1.    The terms of this Agreement are not confidential and will be publicly filed into the Court record of the Lawsuit.

27.2.    The Parties and their respective counsel, agents, and representatives agree not to make any disparaging remarks about the other Party relating to this Agreement and the negotiations leading up to it.

28.    **Release.** Effective on the date of Final Approval, the Injunctive Releasing Parties unconditionally and forever fully and finally release, acquit, and discharge the Poly-Wood Parties from the Released Injunctive Claims. Pursuant to this release, Named Plaintiff and Settlement Class Members shall not bring any claims concerning the Accessibility of the Digital Properties during the Agreement Term. Notwithstanding this release, Named Plaintiff and Settlement Class Members may fully utilize the Dispute Resolution Procedure

during the Agreement Term.

29.    **Entire Agreement.** This Agreement contains all the agreements, conditions, promises, and covenants among Poly-Wood, Named Plaintiff, Class Counsel, and the Settlement Class regarding matters set forth in it and supersedes all prior or contemporaneous agreements, drafts, representations or understandings, either written or oral, with respect to the subject matter of the present Agreement.

30.    **Modification.** Prior to Final Approval, this Agreement can only be amended by written agreement of the Parties hereto. Following Final Approval, no modification of this Agreement shall be effective unless it is pursuant to Court Order.

31.    **Severability.** If any provision or any part of this Agreement thereof shall at any time be held unlawful, or inconsistent with applicable law, in whole or in part, under any federal, state, county, municipal or other law, ruling, or regulation, then the remaining provisions of this Agreement shall remain effective and enforceable.

32.    **Excused Performance.**  Nothing in this Agreement requires Poly-Wood to take any actions that are impossible, unlawful, or would result in an undue burden as defined in 28 C.F.R. § 36.104, or fundamentally alter the nature of the good, service, facility, privilege, advantage or accommodation Poly-Wood offers.

33.    **Court Decisions.**  Poly-Wood's obligations set forth in this Agreement shall not apply if, at any time during the term of this Agreement or thereafter, the United States Court of Appeals for the First Circuit or the United States Supreme Court determines that websites are not places of public accommodations for purposes of the ADA or that the ADA does not cover websites.

34.    **Subsequent Regulations.** If the United States Department of Justice promulgates a final ADA Title III regulation setting out a technical standard applicable to the Digital Properties during the term of this Agreement, Poly-Wood will take reasonable and necessary efforts to ensure legal compliance with such standards within the time frames set forth in the regulations.

35.    **Drafting of this Agreement.** This Agreement is deemed to have been drafted by all Parties hereto, as a result of arm's length negotiations among the Parties. Whereas all Parties have contributed to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

36.    **Execution in Counterparts.** The Parties may execute this Agreement in counterparts, each of which shall constitute an original for all purposes, including any copies of same, and all duplicate counterparts will be construed together and constitute one Agreement. The

Parties will be bound by signatures on this document which are transmitted by mail, hand delivery, facsimile, email or any other electronic means to the other Party or, if applicable, counsel of record for the other Party. Such signature will have the same binding effect as any original signature. A typed electronic signature will have the same effect as a handwritten signature.

37.  **Continuing Jurisdiction.** The Parties agree that the United States District Court for the District of Massachusetts shall have continuing jurisdiction throughout the Agreement Term to interpret and enforce this Agreement.

38.  **Deadlines.** The Parties and the Court recognize that from time-to-time unforeseen events, such as exigent business circumstances, labor disputes, natural disasters, personnel issues, pandemics, and negotiations with third parties, cause delays in the accomplishment of objectives no matter how well intentioned and diligent the Parties may be. Accordingly, with regard to the provisions of this Agreement that require that certain acts be taken within specified periods, the Parties understand and agree that Court approval shall not be required for reasonable extensions of deadlines. In the event that any Party determines that an action required by this Agreement cannot be taken within the specified time period, that Party shall promptly notify the other Parties that it anticipates a delay, the reasons for the delay and a proposed alternative deadline. The Parties shall endeavor to cooperate in reasonably rescheduling such deadlines. However, if the other Party does not agree to the proposed delay, the Parties shall submit the matter to the Dispute Resolution Procedure.

39.  **Communications to Named Plaintiff, Class Counsel, the Settlement Class, and Poly-Wood.** All letters, notices, IRS Form 1099s, requests, demands and other communications required or permitted to be given to the Parties pursuant to this Agreement shall be in writing, provided by electronic mail, facsimile, and/or next-day express delivery service and addressed as follows:

39.1.  To Named Plaintiff, Class Counsel, or the Settlement Class:

Kevin. W. Tucker (He/Him)
Kevin Abramowicz (He/Him)
EAST END TRIAL GROUP LLC
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
Tel. (412) 877-5220

39.2.  To Poly-Wood:

Tami Earnhart
ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN 46282-0200
Tami.Earnhart@icemiller.com
Tel. (317) 236-2235
Fax. (317) 592-4853

Poly-Wood may change the individuals to whom notices and communications required
by this Agreement shall be sent by providing Class Counsel with written notification
that it wishes to do so.

*Signature block begins on the next page.*

THE PARTIES EXECUTING THIS AGREEMENT BELOW INDIVIDUALLY ACKNOWLEDGE THAT EACH: HAS READ THIS AGREEMENT; UNDERSTANDS, ACCEPTS, AND AGREES TO ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT; AND EXECUTES THIS AGREEMENT VOLUNTARILY, WITH FULL UNDERSTANDING OF ITS CONSEQUENCES, AND WITHOUT DURESS OF ANY KIND.

**STEPHEN GIANNAROS**

DATED: Aug 10, 2022          By: *Stephen C. Giannaros*
Stephen C. Giannaros (Aug 10, 2022 12:56 EDT)

**POLY-WOOD, LLC**

DATED: 8/8/22          By: _____

Its: CFO

**APPROVED AS TO FORM AND CONTENT:**

EAST END TRIAL GROUP LLC          ICE MILLER LLP

By: _____          By: _____

Kevin W. Tucker (He/Him)          Tami Earnhart

Kevin Abramowicz (He/Him)          Ice Miller LLP

6901 Lynn Way, Suite 215          One American Square, Suite 2900

Pittsburgh, PA 15208          Indianapolis, IN 46282-0200

Counsel for Stephen Giannaros          Counsel for Poly-Wood, LLC

and the Settlement Class

22 of 22